In re Frederick CLAYTON, Debtor.

Bankruptcy No. 8500261.

United States Bankruptcy Court, D. Rhode Island.

May 11, 1987.

William Walsh, Cranston, R.I., for Fredrick Clayton.

David Cooper, Cooper & Harris, Providence, R.I., pro se.

## DECISION ON APPLICATION FOR ATTORNEYS' FEES

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on December 18 and December 23, 1986, on the debtor's objection to the application of Cooper & Harris, for attorneys' fees in the amount of $1,215, for services performed in connection with the sale of various properties owned by the debtor.[1]

7052 and Fed.R.Civ.P. 52.

At the hearing, the debtor, Frederick Clayton testified that he and David Cooper, Esq., his attorney at the time, had agreed that Cooper would represent him in connection with the sale of five parcels of real property, all located in Providence, Rhode Island. According to Clayton the fee charged by Cooper would be $1,200, plus $150 per closing. On October 3, 1986, John Boyajian, Esq., the standing Chapter 13 trustee, abandoned four properties to the debtor, since they were not necessary to the debtor's reorganization. The abandoned properties were located at: 52 Bridgeham Street; 48 Bridgeham Street; 384–386 Niagra Street; and 186–188 Sackett Street, Providence. Subsequently Clayton sold these four properties on October 27, 1986. Cooper represented Clayton at these sales and, as the closing documents reveal, he retained $562.50 per closing for a total of $2,250. The fifth property, at 79 Ontario Street, Providence, was sold by the trustee as part of the funding of Clayton's Chapter 13 plan.

Martin Harris, Esq. testified that his application of $1,215 is for services performed by him in preparation for the closings, and in addition to the debtor's agreement with Cooper described above. Those services included investigation of housing code cases pending against Mr. Clayton's properties, and communications with creditors whose liens had to be discharged before Clayton could convey clear titles. Given the numerous problems associated with the properties,[2] both the amount of the time expended by Harris, 20¼ hours, and the hourly rate of $60 per hour seem reasonable. But reasonableness is not the issue in this dispute. Rather, it involves the terms of the agreement between this client and his attorneys.

Since the liquidation of the first four parcels was not required to fund his Chapter 13 plan, it seems clear that Clayton had made a personal decision, not bankruptcy related, to sell the four properties abandoned to him by the trustee. It is also apparent that Clayton and Cooper had an agreement concerning the legal fees Cooper would charge in connection with those sales. What is not clear is how Cooper arrived at the amount of $562.50 per closing to satisfy his fees. The *only* evidence as to the terms of the agreement was Clayton's testimony that the parties had agreed on a lump sum figure of $1,200, plus $150 per closing. This evidence is uncontradicted,[3] and is actually supported by the application of Martin Harris, Esq. for fees in nearly the same amount as testified to by Clayton.

On the other hand, Clayton's contention that he owes none of the $1200 part of the fee because those services were performed by Harris, is without merit and is rejected. Services in preparation for the closings were performed adequately for Clayton, by the firm, and it is immaterial whether the services were performed by Cooper personally or by one of his associates. Therefore, we find that the agreement that Clayton would pay $1,200 in legal fees, plus $150 per closing (for a total of $1800) to David Cooper for work done in connection with the sale of the four properties in question, is valid and binding on both parties to this dispute.

Accordingly, we conclude that the firm of Cooper & Harris is entitled to compensation in the total amount of $1,800. Since that amount has already been paid from the monies retained by the firm from the various closings, Cooper & Harris is ordered to return $450 to Frederick Clayton,

2. Originally, the trustee needed to sell only the Ontario Street property to fund the plan. However, because of unexpected liens and other charges, about which the debtor was unaware, the trustee required Clayton's attorney to hold $2,500 in escrow from each house sold. The bulk of this money was then used to fund the deficiency in the plan not covered by the proceeds of the trustee's sale. The closing documents indicate that the four properties sold by the debtor had similar problems. The legal work performed for Clayton dealt with those problems so that he could pass clear title to each of the properties.

3. The witnesses called by Mr. Cooper, all of whom are employed by or associated with him, did not testify as to the substance of the fee agreement between Clayton and Cooper. Their testimony was that the services in question were actually performed.

which is the difference between the amount due under the agreement ($1,800), and the amount retained by the firm ($2,250).

Enter Judgment accordingly.